1  FRANK N. DARRAS #128904, Frank@DarrasLaw.com
2  LISSA A. MARTINEZ #206994, LMartinez@DarrasLaw.com
   SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
3  PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

4   DarrasLaw

5  3257 East Guasti Road, Suite 300
6  Ontario, California 91761-1227
   Telephone:    (909) 390-3770
7  Facsimile:    (909) 974-2121

8  Attorneys for Plaintiff
   JEFFREY WILLIAMS

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12  JEFFREY WILLIAMS,                Case No: **CV12-4443**-MWF (JCG)

13              Plaintiff,

14                                   COMPLAINT FOR BENEFITS UNDER
         vs.                         AN EMPLOYEE WELFARE BENEFIT
15                                   PLAN

16  LIFE INSURANCE COMPANY OF
    NORTH AMERICA,
17

18              Defendant.

19  ────────────────────────────────

20       Plaintiff alleges as follows:

21       1.    This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337

22  and 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Income Security

23  Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by

24  Plaintiff for Disability benefits under an employee benefit plan regulated and governed

25  under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C.

26  § 1331 as this action involves a federal question.

27       2.    The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of

28  the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

- 1 -

COMPLAINT



1    Those avenues of appeal have been exhausted.

2        3.    Plaintiff is informed and believes and thereon alleges that STAR Financial

3    Group Employee Welfare Benefit Plan ("Plan") is an employee welfare benefit plan

4    established and maintained by STAR Financial to provide its employees and those of its

5    subsidiaries and affiliates, including Plaintiff, JEFFREY WILLIAMS ("MR. WILLIAMS"),

6    with income protection in the event of a disability and is the Plan Administrator.

7        4.    Plaintiff alleges upon information and belief that Defendant, LIFE

8    INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times

9    was, a corporation duly organized and existing under and by virtue of the laws of the

10   State of Pennsylvania, authorized to transact and transacting the business of insurance

11   in this state, and, the insurer and Claims Administrator for the Plan.

12       5.    Plaintiff further alleges that venue is proper in this district pursuant to 29

13   U.S.C. § 1132(e)(2)[1] in that defendant LINA, who fully insured the policy and who is

14   ultimately liable if Plaintiff is found disabled, may be found in this district.  Since on or

15   about November 1, 1956, LINA has been registered as a corporation with the state of

16   California, has extensive contacts within the state, employs California residents, conducts

17   ongoing business within the state and therefore, may be found within the state.

18       6.    At all relevant times Plaintiff was a resident and citizen of the United

19   States, an employee of STAR Financial, its successors, affiliates and/or subsidiaries,

20   and a participant in the Plan.

21       7.    Based upon information and belief, Plaintiff alleges that at all relevant

22   times herein Plaintiff was covered under group disability policy number LK-970006 that

23   had been issued by Defendant LINA[2] to STAR Financial to insure its Plan, and the

---

[1] 29 USC section 1132(e)(2) provides: "Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

[2] Although correspondence to MR. WILLIAMS during the administration of this claim has "CIGNA" on the letterhead, LINA was the underwriting and issuing company. Additionally, according to correspondence to MR. WILLIAMS on the claim: "CIGNA Group Insurance is a registered service mark of CIGNA Intellectual

1  eligible participants and beneficiaries of the Plan, including Plaintiff.  A copy of the

2  subject policy is attached hereto as Exhibit "A".

3       8.    The subject Policy promised to pay MR. WILLIAMS monthly long term

4  disability benefits for a specified period of time should he become disabled. Therefore,

5  LINA both funds and decides whether claimants will receive benefits under the Plan and

6  as such suffers from a structural conflict[3] which requires additional skepticism[4].

7       9.    Based upon information and belief, Plaintiff alleges that, according to the

8  terms of the Plan, LINA promised to pay disability benefits to Plaintiff follows:

9

| Term | Provision |
|------|-----------|
| Benefit Waiting Period | 180 days |
| Disability Benefit | The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits. |
| Maximum Disability Benefit | $6,000 per month |

Property, Inc. licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America…Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation." Therefore, both CIGNA and Life Insurance Company of North America will be referred to as "LINA" herein.

[3] Where an administrator "both decides who gets benefits and pays for them, … it has a direct financial incentive to deny claims," and therefore "labors under … a conflict of interest." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 511 F.3d 1206, 1211 (9th Cir. 2008). *See also Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2349-50 (2008) (dual role where administrator both determines eligibility for benefits and funds creates a conflict of interest). Pursuant to *Abatie*, "a reviewing court must always consider the inherent conflict that exists when a plan administrator both administers and funds it." *Saffon*, 511 F.3d at 1211 (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006)(emphasis added). "When reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, [the Court] must determine the extent to which the conflict influenced the administrator's decisions and discount to that extent the deference … accorded the administrator's decision." *Id.* at 1212. As the Supreme Court recently explained, the "conflict of interest…should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to cases where an insurance company administrator has a history of biased claims administration." *Glenn*, 128 S. Ct. at 2351.

[4] We must judge the reasonableness of the plan administrator skeptically where, as here, the administrator has a conflict of interest. Even without the special skepticism we are to apply in cases of conflict of interest, deference to the plan administrator's judgment does not mean that the plan prevails. "Deference" is not a "talismanic word[ ] that can avoid the process of judgment." The conflict of interest requires additional skepticism because the plan acts as judge in its own cause. [*Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011)]

| Term | Provision | |
|---|---|---|
| **Minimum Disability Benefit** | $100 per month | |
| **Maximum Benefit Period** | **Age When Disability Begins** | **Maximum Benefit Period** |
| | Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| **Disability "Own Occupation" Disability Definition**<br><br>**"Any Occupation" Disability Definition** | An Employee is Disabled if, because of Injury or Sickness,<br><br>1. he or she is unable to perform all the material duties of his or her regular occupation, and solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings from working in his or her regular occupation; and<br><br>2, after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, and solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings. | |

10.    Prior to his disability under the terms of the Plan, on or about November 19, 2007, MR. WILLIAMS had been employed with STAR Financial as a regional leasing representative.

11.    However, MR. WILLIAMS became disabled under the terms of the Plan and subsequently submitted a claim to LINA for payment of long term disability benefits.

12.    LINA paid long-term disability benefits to Plaintiff up until on or about May 16, 2010. But, on or about May 20, 2011, LINA unreasonably, unlawfully, capriciously and arbitrarily denied his claim, and failed to pay him the further benefits to which he was, and is, entitled under the terms of the Plan. And, on or about November 28, 2011, LINA unreasonably, unlawfully, capriciously and arbitrarily upheld its denial.

13.    According to LINA's denial letters:

- **05/20/2011**: "At this time, your client no longer meets the definition

1               of Disability stated above and your client's claim has been closed.

2               Payments have been made through May 15, 2010 and no further

3               benefits are due."

4         •  **11/28/2011**: "At this time your claim has been closed and no

5               benefits are payable beyond May 15, 2010…You have the right to

6               bring a legal action for benefits under the Employee Retirement

7               Income Security Act of 1974 (ERISA) section 502 (a) following an

8               adverse benefit determination on appeal."

9       14.    In so doing, LINA unreasonably, unlawfully, arbitrarily and capriciously

10  relied upon the opinions of physicians/medical personnel who did not examine Plaintiff,

11  and were financially biased and/or not qualified to refute the findings of Plaintiff's board

12  certified physicians; required the medical record reviewing physicians to use guidelines

13  that were not contained in the Policy/Plan, i.e. requesting the reviewer to comment on

14  whether or not the attending treating physician's work restrictions were "supported by

15  the measured limitations in the documentation provided for review" when LINA knew

16  that "measured limitations" were not required under the terms of the Plan in order to

17  qualify for disability, and defining Limitations as "inherently measurable" losses (a

18  definition which was not contained in the Policy/Plan); failed to take into consideration

19  the effects of the prescribed pain medication that Plaintiff was taking upon Plaintiff's

20  ability to perform the duties of Plaintiff's own, or any, occupation; failed to timely identify

21  the medical personnel who reviewed Plaintiff's file; failed to take into consideration the

22  effect of chronic pain[5] upon Plaintiff's ability to perform the duties of Plaintiff's own, or

23

24  ———————————

25  [5] **_Pain_** causes impairment in focus and concentration, which in turn causes impairments in work functions.
Thus, even though a sedentary job might otherwise be appropriate in terms of the physical requirements,

26  it is not workable due to the pain.

27  Additionally, according to the website of its parent company, CIGNA: Pain that lasts for 3 months or
longer is called chronic. The cause of chronic pain is not always clear. It may occur because brain

28  chemicals that usually stop pain after you get better from an illness or injury are not working right. Or
damaged nerves can cause the pain. Chronic pain can also occur without a known cause. You may have
tests to find out if a medical problem is causing the pain. Your doctor may check for problems with your

COMPLAINT

1  any, occupation; failed to complete a full and fair vocational assessment; relied strictly

2  upon physical requirements of occupations labeled as "sedentary" instead of taking into

3  consideration the non exertional requirements of Plaintiff's own, or any, occupation; and,

4  misrepresented the terms of the Policy[6].

5      15.    Additionally, LINA knew or should have known that the documentation

6  submitted to and/or obtained by LINA clearly substantiated his disability, including, but

7  not limited to, the following:

| Date | Document/Finding |
|------|------------------|
| 09/26/2007 | **SPINE INSTITUTE MEDICAL RECORD**<br><br>**IMPRESSION**<br>The patient has very significant cervical disc disease with very significant cord at root compression at multiple levels, forcing C3 through C6, the worst being C4–C5 and C5–C6.<br><br>**DISCUSSION**<br>I think the patient likely is going to need cervical decompression and fusion. |
| 11/08/2007 | **LETTER FROM DR. MOBASSER TO DR. PRYOR**<br><br>I have looked at the MRI of his neck. He has severe spondylosis with associated disc herniation and significant spinal cord compression at C45 and C5-6. |
| 11/21/2007 | **PROCEDURE NOTE**<br><br>**PRE AND POST OPERATIVE DIAGNOSIS**: Cervical stenosis with myelopathy at C4-C5 and C5-C6.<br><br>**PROCEDURES PERFORMED** |

nervous system and may order blood tests. In most cases, test results are normal. This can make it hard to know the exact cause of the pain. But this doesn't mean that your pain isn't real.

[6] In its denial letters LINA stated that work restrictions "are not supported by measured limitations in the documentation", and medical information "does not support significant physical deficits". At the time that LINA wrote these letters it knew, or should have known, that the Plan did not require "measured limitations" or "significant physical deficits" in order to qualify for benefits. Additionally, according to a recent court case: "Many medical conditions [such as pain] depend for their diagnosis on patient reports of pain or other symptoms, and some cannot be objectively established until autopsy. In neither case can a disability insurer condition coverage on proof by objective indicators...where the condition is recognized yet no such proof is possible...conditioning an award on the existence of evidence that cannot exist is arbitrary and capricious." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011)

| | | |
|---|---|---|
| | | 1 C4-C5 anterior cervical diskectomy for decompression of spinal cord;<br>2 C5-C6 anterior cervical diskectomy for decompression of spinal cord;<br>3. C4-C5 and C5-C6 anterior interbody arthrodesis;<br>4 Placement of intervertebral biomechanical device times two at C4-C5 and C5-C6;<br>5. Anterior instrumentation from C4 to C6. |
| | 06/03/2008 | **OFFICE NOTE BY DR. MOBASSER**<br><br>HISTORY OF PRESENT ILLNESS: Mr. Williams is here for follow-up. He is seven months status post C4-5 and C5-6 ACDF for spinal myelopathy. He had an acute neurological decline with spinal myelopathy requiring a two-level anterior cervical discectomy to decompress him. He has had a slow recovery. He continues to have significant myelopathic signs and symptoms related to hand function and gait. This is a clearly a spinal cord injury from the pressure he had on his spinal cord.<br><br>…Mr. Williams is clearly not ready to go back to his job. He has a significant spinal cord injury and he may not ever regain enough function that he is able to perform his job… |
| | 01/06/2009 | **OFFICE NOTE BY DR. FRENCH**<br><br>I do feel he is disabled… |
| | 03/30/2009 | **SOCIAL SECURITY ADMINISTRATION DECISION**<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br>After careful consideration of the entire record, the undersigned makes the following findings:<br><br>* * *<br><br>2. The claimant has not engaged in substantial gainful activity since November 19, 2007, the alleged onset date...<br><br>* * *<br><br>3. The claimant has the following severe impairment (s): cervical myelopathy[7]… |

[7] The spinal cord begins at the base of the brain and continues through the bony canal of the cervical (neck) and thoracic (chest) portions of the spine to end in the upper region of the lumbar (lower) spine as a bundle of individual nerve fibers. At any level the spinal cord carries the neural impulses to the regions of the body below (distal to) that level. In the upper cervical spine, the spinal cord contains fibers that transmit impulses to the arms, chest, and legs.

* * *

The claimant cannot perform simple grasping, pushing and pulling, or fine manipulation in a work situation; and he cannot use his hands for repetitive motion tasks, such as typing, writing, or assembly.

The claimant cannot work at unprotected heights or around moving machinery. He cannot be exposed to vibration, and he cannot work in an area with marked change in temperature or humidity.

Dr. French...opined that the claimant suffered from pain for which there was a reasonable medical basis, post surgery cervical fusion; and, he opined that the pain would prevent the claimant from working full-time at even a sedentary position. In addition, Dr. French believed that the claimant's pain would interfere with his ability to complete tasks in a timely manner and with his ability to attend and concentrate at skilled work tasks.

6. The claimant is unable to perform any past relevant work...

* * *

9. The claimant's acquired job skills do not transfer to other occupations...

... His inability to work on a regular and continuing basis prevents transferability of his skills to full-time work.

---

The clinical syndrome that results from a disorder in the spinal cord that disrupts or interrupts the normal transmission of the neural signals is called a "myelopathy". For anatomical reasons, cervical myelopathy may involve the arms and hands, legs, and bowel and bladder function.

The symptoms of cervical myelopathy depend on the level(s) of the spinal cord that are involved and the pattern of the involvement. Symptoms may include: numbness of the hands, clumsiness of the hands, arm weakness, hand weakness, leg stiffness ("walking like a robot"), loss of balance, urinary urgency and, neck pain.

[8] According to the Social Security definition of disability, which is more stringent than the subject Plan's Disability definition: "A person is disabled, and thereby eligible for Social Security disability insurance benefits and Supplemental Security Income (SSI), "only if his physical or mental impairment or impairments are of such severity that *he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.*" 42 U.S.C. §§ 423(d)(2)(A), 1382a(3)(B) (emphasis added).

The SSA, moreover, is an objective governmental body that undertakes a thorough review of applicants' eligibility for benefits, and has neither the incentive to disperse benefits liberally, nor a reputation for overindulging applicants. (Alfano v. CIGNA, 2009 US Dist LEXIS 7688 (SDNY 2009))

| | | |
|---|---|---|
| | | 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform… |
| | | * * * |
| | | 11. The claimant has been under a disability as defined in the Social Security act since November 19, 2007[8], the alleged onset date of disability… |
| | 07/30/2009 | **LETTER FROM DR. FRENCH**<br><br>I think he still has significant neurologic residual and feel that he is quite still disabled not only from his spasticity coming from his myelopathy but the heavy narcotic pain medication and Lyrica and Valium which he is on in order to function.<br><br>It is my opinion that he remains disabled.<br><br>… I doubt that he's going to be showing any improvement and he will have permanent significant residuals. |
| | 03/30/2010 | **LETTER FROM MR. WILLIAMS TO LINA**<br><br>As with most patients recovering from severe spinal cord surgery, in addition to a full list of other on going issues that I deal with on a daily basis I also am forced to deal with a compromised immune system.<br><br>On February 11,2010, my compromised immune system, lead to me being admitted to the hospital for the treatment of a rare and raging infection that transpired over a few short hours.<br><br>The wound on my right hand is still open… |
| | 08/05/2010 | **LETTER FROM PHYSICAL THERAPIST TO WHOM IT MAY CONCERN**<br><br>He has had physical therapy off and on since prior to September 2009 with his most recent session on 06/28/2010.<br><br>Jeff continues to have muscle atrophy in the left leg with weakness in both legs and upper body. He has an abnormal gait and dynamic balance deficits. He demonstrates decreased endurance with activity, but also has a limit to his tolerance to sit for periods of time due to pain. |
| | 03/02/2011 | **MEDICAL RECORD**<br><br>He has the following problems:<br>cervical myopathy and peripheral neuropathy. Started in August 2007 with neck pain and weakness in his legs and arms. He was initially |

thought to have MS, but symptoms finally thought to be secondary to disc herniation with cord compression and degeneration. He had spinal fusion from C4–C6. Following the surgery, he has had a lot of PT, and been treated with many different pain medications. He still has a lot of neuropathic pain in both arms, right>left and both legs left>right, balance disturbance, spasticity, weakness, and muscle atrophy. He falls frequently.

He is currently taking Lyrica, Norco[9], Tramadol[10], Diazepam[11], and Methocarbamol[12].

16.    To date, even though MR. WILLIAMS has been disabled, LINA has not paid MR. WILLIAMS any disability benefits beyond on or about May 16, 2010. The arbitrary and capricious nature of LINA's denial decision is evidenced by, but not limited to, the following:

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed his file; failing to timely advise MR. WILLIAMS of what specific documentation it needed from him to perfect his claim; and, failing to provide a complete copy of all documents, records, and other information relevant to his claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);

- LINA ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim;

- LINA did not give proper weight to the Social Security Administration's finding, that was obtained by LINA's agent, Allsup, that MR. WILLIAMS

---

[9] This medication, also known as hydrocodone and Vicodin, is a narcotic pain reliever with the following side effects: nausea, vomiting, lightheadedness, dizziness, and, drowsiness.

[10] This medication, which is similar to morphine, as the following side effects: nausea, constipation, dizziness, headache, drowsiness, and visual disturbances.

[11] This medication, also known as Valium, as the following side effects: drowsiness; fatigue; loss of balance; confusion; speech problems; and double vision.
[12] This medication, which is a muscle relaxant, as the following side effects: stomach upset, nausea, constipation, headache, blurred vision, lightheadedness, dizziness, and drowsiness.

**DarrasLaw**

1    was disabled from any occupation[13]; and,

2    • LINA ignored the opinions of MR. WILLIAMS' board certified treating

3    physicians and/or misrepresented the opinions of MR. WILLIAMS'

4    treating physicians. Deference should be given to the treating

5    physician's opinions as there are no **specific**, **legitimate** reasons for

6    rejecting the treating physicians' opinions which are based on

7    **substantial evidence** in the claim file. Further, LINA's highly conflicted

8    **physician's** opinion does not serve as **substantial evidence**, as it is

9    not **supported by evidence** in the claim file, was not issued by a

10    physician with the same level of medical expertise as the board certified

11    treating physicians, nor is it **consistent with the overall evidence** in

12    the claim file.

13    17.    For all the reasons set forth above, the decision to deny disability

14    insurance benefits was arbitrary, capricious, wrongful, unreasonable, irrational, sorely

15    contrary to the evidence, contrary to the terms of the Plan and contrary to law. Clearly,

16    LINA abused its discretion in deciding to deny this claim as the evidence shows its

17    denial decision was arbitrary and capricious. Further, LINA's denial decision and actions

18    heighten the level of skepticism with which a court views a conflicted administrator's

19    decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006)

20    and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

21    18.    Additionally, ERISA imposes higher-than-marketplace quality standards

22    on insurers. It sets forth a special standard of care upon a plan administrator, namely,

23    that the administrator "discharge [its] duties" in respect to discretionary claims

24    processing "solely in the interests of the participants and beneficiaries" of the plan, §

25    1104(a)(1); it simultaneously underscores the particular importance of accurate claims

26

27    _____

28    [13] A Plan administrator may not arbitrarily disregard a favorable ruling by the Social Security Administration as, at a minimum, it provides support for the conclusion that an administrative agency charged with examining MR. WILLIAMS' medical records found objective support for its favorable decision.

1   processing by insisting that administrators "provide a 'full and fair review' of claim

2   denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements

3   marketplace and regulatory controls with judicial review of individual claim denials, see

4   § 1132(a)(1)(B).

5       19.   As a direct and proximate result of LINA's failure to provide MR.

6   WILLIAMS with disability benefits, MR. WILLIAMS has been deprived of said disability

7   benefits beginning on or about May 16, 2010, to the present date.

8       20.   As a further direct and proximate result of the denial of benefits, MR.

9   WILLIAMS has incurred attorney fees to pursue this action, and is entitled to have such

10  fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

11      21.   A controversy now exists between the parties as to whether MR.

12  WILLIAMS is disabled as defined in the Plan.  Plaintiff seeks the declaration of this

13  Court that he meets the Plan definition of disability and consequently he is entitled to all

14  benefits from the Plan to which he would be entitled while receiving disability benefits

15  including, but not limited to, any medical, vision and dental benefits, life insurance and

16  pension, with reimbursement of all expenses and premiums paid for such benefits from

17  the termination of benefits to the present.  In the alternative, Plaintiff seeks a remand for

18  a determination of Plaintiff's claim consistent with the terms of the Plan.

19      WHEREFORE, Plaintiff prays for relief against Defendants as follows:

20      1.   An award of benefits in the amount not paid MR. WILLIAMS beginning on

21  or about May 16, 2010, together with interest at the legal rate on each monthly payment

22  from the date it became due until the date it is paid; plus all other benefits from the Plan

23  to which he would be entitled while receiving disability benefits including, but not limited

24  to, any medical, vision and dental benefits, life insurance and pension, with

25  reimbursement of all expenses and premiums paid for such benefits or, in the

26  alternative, a remand for a determination of Plaintiff's claim consistent with the terms of

27  the Plan;

28      2.   An order determining MR. WILLIAMS is entitled to future disability

1    payments/benefits so long as he remains disabled as defined in the Plan;

2        3.    For reasonable attorney fees incurred in this action; and for such other

3    and further relief as the Court deems just and proper.

4

5    Dated:  May 21, 2012                    **D** DarrasLaw

6

7

8                                            FRANK N. DARRAS
                                             LISSA A. MARTINEZ
9                                            SUSAN B. GRABARSKY
                                             PHILLIP S. BATHER
10                                           Attorneys for Plaintiff
                                             JEFFREY WILLIAMS
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIFE INSURANCE COMPANY OF NORTH AMERICA
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603        TDD (800) 552-5744
A STOCK INSURANCE COMPANY

GROUP POLICY

**POLICYHOLDER:**                    STAR Financial Group

**POLICY NUMBER:**                   LK-970006

**POLICY EFFECTIVE DATE:**           March 1, 2002

**POLICY ANNIVERSARY DATE:**         January 1

This Policy describes the terms and conditions of coverage. It is issued in Indiana and shall be governed by its laws. The Policy goes into effect on the Policy Effective Date, 12:01 a.m. at the Policyholder's address.

In return for the required premium, the Insurance Company and the Policyholder have agreed to all the terms of this Policy.


*Susan L. Cooper*                           *Gregory H Wolf*

Susan L. Cooper, Secretary                  Gregory H. Wolf, President

TL-004700                                                                          97 v-1


000014                                EXHIBIT  A

# TABLE OF CONTENTS

SCHEDULE OF BENEFITS.................................................................................. 1

SCHEDULE OF BENEFITS FOR CLASS 1 ....................................................... 2

ELIGIBILITY FOR INSURANCE ....................................................................... 4

EFFECTIVE DATE OF INSURANCE ................................................................. 4

TERMINATION OF INSURANCE ...................................................................... 4

CONTINUATION OF INSURANCE .................................................................... 4

DESCRIPTION..................................................................................................... 5

EXCLUSIONS ...................................................................................................... 9

CLAIM PROVISIONS ......................................................................................... 10

ADMINISTRATIVE PROVISIONS .................................................................... 12

GENERAL PROVISIONS .................................................................................... 13

DEFINITIONS...................................................................................................... 14

SCHEDULE OF AFFILIATES ............................................................................ 16

000015     EXHIBIT  A

## SCHEDULE OF BENEFITS

**Premium Due Date**

Premiums are due in arrears on the date coinciding with the day of the Policy Anniversary Date or the last day of the month, if earlier.

**Classes of Eligible Employees**

Class 1          All active, Full-time Employees of the Employer regularly working a minimum of 30 hours per week.

1

000016

EXHIBIT A

## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:                  First of the month on or after 90 days of continuous Active Service

For Employees hired after the Policy Effective Date:                  First of the month on or after 90 days of continuous Active Service

**Definition of Disability/Disabled**
An Employee is Disabled if, because of Injury or Sickness,
1.      he or she is unable to perform all the material duties of his or her regular occupation, and solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings from working in his or her regular occupation; and
2.      after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, and solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

**Definition of Covered Earnings**
Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins.  It includes earnings received from commissions but not bonuses, overtime pay and other extra compensation.  Covered Earnings are determined initially on the date an Employee applies for coverage.  A change in the amount of Covered Earnings is effective on the date of the change, if the Employer gives us written notice of the change and the required premium is paid.

Commissions will be averaged for the 24 months just prior to the date Disability begins, or the months employed, if less than 24 months.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

**Benefit Waiting Period**                  180 days

A period of Disability is continuous even if the Employee can return to Active Service for up to 30 days during the Benefit Waiting Period.  The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

**Disability Benefit**                  The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

**Maximum Disability Benefit**                  $6,000 per month

**Minimum Disability Benefit**                  $100 per month

2

 EXHIBIT A

*Work Incentive Benefits*

For the first 12 months the Employee is eligible for a Disability Benefit, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 12 months, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount figured above.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount he or she earns from this work during the period for which Disability Benefits are payable.

**Additional Benefits**

*Survivor Benefit*

| | |
|---|---|
| Benefit Waiting Period: | After 6 Monthly Benefits are payable. |
| Amount of Benefit: | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 6 monthly Survivor Benefits. |

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

**Initial Premium Rates**

$.31 per $100 of Covered Payroll

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $10,000.

TL-004774

3

000018



EXHIBIT A

## ELIGIBILITY FOR INSURANCE

An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date, or the day after he or she completes the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied. An Employee is not required to satisfy a new Eligibility Waiting Period if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed and within one year becomes a member of an eligible class.

TL-004710

## EFFECTIVE DATE OF INSURANCE

An Employee is required to contribute to the cost of this insurance by authorizing payroll deduction in a form approved by the Employer and the Insurance Company. The effective date of this insurance depends on the date coverage is elected.

Insurance for an Employee who applies for insurance within 31 days after he or she becomes eligible is effective on the latest of the following dates.
1.    The Policy Effective Date.
2.    The date payroll deduction is authorized.
3.    The date the Insurance Company receives the Employee's completed enrollment form.

If an Employee's enrollment form is received more than 31 days after he or she is eligible for this insurance, the Insurability Requirement must be satisfied before this insurance is effective. If approved, this insurance is effective on the date the Insurance Company agrees in writing to insure the Employee. If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

## TERMINATION OF INSURANCE

The insurance on an Employee will end on the earliest date below.
1.    The date the Employee is eligible for coverage under a plan intended to replace this coverage.
2.    The date the Policy is terminated.
3.    The date the Employee is no longer in an eligible class.
4.    The day after the period for which premiums are paid.
5.    The date the Employee is no longer in Active Service.

TL-004714

## CONTINUATION OF INSURANCE

Disability Insurance continues if an Employee's Active Service ends due to a Disability for which benefits under the Policy are or may become payable. Premiums for the Employee will be waived while Disability Benefits are payable. If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, whichever occurs first.

If an Employee's Active Service ends due to an Employer approved unpaid family medical leave of absence, insurance for that Employee will continue for up to 12 weeks if the required premium is paid.

4

000019



EXHIBIT    A

If an Employee's insurance is continued and he or she becomes Disabled during the leave of absence, Disability Benefits will not begin until the later of the following dates.

1.     the date the Benefit Waiting Period is satisfied
2.     the date the Employee was scheduled to return to Active Service

TL-004716

## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits to each class of Insureds.

**Disability Benefits**
The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

**Benefit Waiting Period**
The Benefit Waiting Period is the period of time an Employee must be continuously Disabled before Disability Benefits may be payable. The Benefit Waiting Period is shown in the Schedule of Benefits.

The Insurance Company will waive the Benefit Waiting Period for an Employee if benefits under a Prior Plan were payable on the Policy Effective Date and the Employee returns to Active Service within 6 months after that date. The return to Active Service must be for more than 14 consecutive days but less than 6 months. The later Disability must be caused by the same or related causes for the Benefit Waiting Period to be waived.

**Termination of Disability Benefits**
Disability Benefits will end on the earliest of the following dates.

1.     The date an Employee earns more than the percentage of his or her Indexed Covered Earnings which is used to determine if an Employee is Disabled
2.     The date the Insurance Company determines an Employee is not Disabled
3.     The end of the Maximum Benefit Period
4.     The date an Employee dies
5.     The date the Employee refuses to participate in rehabilitation efforts as required by the Insurance Company
6.     The date the Employee is no longer receiving Appropriate Care

**Successive Periods of Disability**
Once an Employee is eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability unless the Employee returns to Active Service for more than 6 consecutive months.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes or the later Disability occurs after coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if an Employee is eligible for coverage under a plan that replaces this Policy.



EXHIBIT A

**Mental Illness, Alcoholism and Drug Abuse Limitation**
The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1.    Alcoholism
2.    Anxiety disorders
3.    Delusional (paranoid) disorders
4.    Depressive disorders
5.    Drug addiction or abuse
6.    Eating disorders
7.    Mental illness
8.    Somatoform disorders (psychosomatic illness)

If, before reaching the lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

**Pre-Existing Condition Limitation**
The Insurance Company will not pay Disability Benefits for any period of Disability caused by or contributed to by, or resulting from, a Pre-Existing Condition. A "pre-existing condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a physician within 3 months before his or her most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits. It will not apply to a period of Disability that begins after an Employee is in Active Service for at least 12 months after his or her most recent effective date of insurance or the effective date of any added or increased benefits.

Except for any amount of benefit in excess of a Prior Plan's benefit, the Pre-Existing Condition Limitation will not apply to an Employee covered under a Prior Plan who satisfied the pre-existing condition limitation, if any, under that plan. If an Employee, covered under a Prior Plan, did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied.

Time will not be credited for any day an Employee is not actively at work due to his or her Injury or Sickness. The Pre-Existing Condition Limitation will be extended by the number of days the Employee is not actively at work due to his or her Injury or Sickness.

**Disability Benefit Calculation**
The Disability Benefit for any month Disability Benefits are payable is shown in the Schedule of Benefits. Disability Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month.

**Work Incentive Benefit**
If an Employee is covered for Work Incentive Benefits, he or she may return to work while Disabled and Disability Benefits will continue. The conditions under which an Employee may return to work and the amount of this benefit are shown in the Schedule of Benefits.

The Insurance Company will review the Employee's status and will require satisfactory proof of earnings and continued Disability.

6





**Other Income Benefits**

While an Employee is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company may reduce the Disability Benefits payable by the amount of such Other Income Benefits. The extent to which Other Income Benefits will reduce any Disability Benefits payable under the Policy is shown in the Schedule of Benefits.

Other Income Benefits include:

1. any amounts which the Employee or any dependents, if applicable, receive (or are assumed to receive*) under:
   a. the Canada and Quebec Pension Plans;
   b. the Railroad Retirement Act;
   c. any local, state, provincial or federal government disability or retirement plan or law as it pertains to the Employer;
   d. any sick leave plan of the Employer;
   e. any work loss provision in mandatory "No-Fault" auto insurance;
   f. any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

2. any Social Security disability benefits the Employee or any third party receives (or is assumed to receive*) on the Employee's behalf or for his or her dependents; or, if applicable, which his or her dependents receive (or are assumed to receive*) because of the Employee's entitlement to such benefits.

3. any retirement plan benefits funded by the Employer. "Retirement plan" means any defined benefit or defined contribution plan sponsored or funded by an employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

4. any proceeds payable under any franchise or group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

5. any amounts paid on account of loss of earnings or earning capacity through settlement, judgment, arbitration or otherwise, where a third party may be liable, regardless of whether liability is determined.

6. any wage or salary for work performed. If an Employee is covered for Work Incentive Benefits, the Insurance Company will only reduce Disability Benefits to the extent provided under the Work Incentive Benefit in the Schedule of Benefits.

Dependents include any person who receives (or is assumed to receive*) benefits under any applicable law on account of an Employee's entitlement to benefits.

  * See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*

After the first deduction for any Other Income Benefit (except wage or salary) is made, benefits will not be further reduced during that period of Disability due to any cost of living increase in that Other Income Benefit.

EXHIBIT A

*Lump Sum Payments*

Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated the lump sum will be prorated monthly over a five year period.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*

The Insurance Company will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them. These assumed benefits will be the amount the Insurance Company estimates the Employee (or his or her dependents, if applicable) may be eligible to receive. Disability Benefits will be reduced by the amount of any assumed benefits as if they were actually received.

Except for any wage or salary for work performed while Disability Benefits are payable, this assumption will not be made if the Employee gives the Insurance Company proof of the following events.
1.    Application was made for these benefits
2.    A Reimbursement Agreement is signed
3.    Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful
4.    Payments were denied

The Insurance Company will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee actually receives them.

*Social Security Assistance*

The Insurance Company will, at its discretion, assist the Employee in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by the assumed receipt of SSDI benefits while the Employee participates in the Social Security Assistance Program.

The Insurance Company may require the Employee to file an appeal if it believes a reversal of a prior decision is possible. If the Employee refuses to participate in, or cooperate with, the Social Security Assistance Program, the Insurance Company will assume receipt of SSDI benefits until the Employee gives us proof that all administrative remedies are exhausted.

**Minimum Benefit**
The Insurance Company will pay the Minimum Benefit regardless of any reductions made for Other Income Benefits. However, if there is an overpayment due, this benefit may be reduced to recover the overpayment.

**Recovery of Overpayment**
If benefits are overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods.
1.    A request for lump sum payment of the overpaid amount
2.    A reduction of any amounts payable under the Policy

If there is an overpayment due when an Employee dies, any benefits payable under the Policy will be reduced to recover the overpayment.

TL-004771

8



## ADDITIONAL BENEFITS

**Rehabilitation During A Period of Disability**
If, while an Employee is Disabled, the Insurance Company determines that he or she is a suitable candidate for rehabilitation he or she may participate in a Rehabilitation Plan. The terms and conditions of the Rehabilitation Plan must be mutually agreed upon by the Employee and the Insurance Company.

The Insurance Company may require an Employee to participate in a rehabilitation assessment or a Rehabilitation Plan at our expense. The Insurance Company will work with the Employee, the Employer and the Employee's Physician and others, as appropriate, to develop a Rehabilitation Plan. If the Employee refuses to participate in the rehabilitation efforts, Disability Benefits will not be payable.

The Rehabilitation Plan may, at the Insurance Company's discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while he or she participates in the program.

A "Rehabilitation Plan" is a written agreement between the Employee and the Insurance Company in which the Insurance Company agrees to provide, arrange or authorize vocational or physical rehabilitation services.

TL-005105

**Survivor Benefit**
The Insurance Company will pay a Survivor Benefit if an Employee dies while Monthly Benefits are payable. The Employee must have been continuously Disabled for the Survivor Benefit Waiting Period before the first benefit is payable. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits.

Benefits will be paid to the Employee's Spouse. If there is no Spouse, benefits will be paid in equal shares to the Employee's surviving Children. If there are no Spouse and no Children, benefits will be paid to the Employee's estate.

"Spouse" means an Employee's lawful spouse. "Children" means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance. The term includes a stepchild living with the Employee at the time of his or her death.

TL-005107

## EXCLUSIONS

The Insurance Company will not pay Disability Benefits for a Disability that results, directly or indirectly, from:

1. suicide, attempted suicide, or whenever an Employee injures himself or herself on purpose.
2. war or any act of war, whether or not declared.
3. serving on full-time active duty in any armed forces. If the Employee sends proof of military service, the Insurance Company will refund the portion of the premium paid to cover the Employee during a period of such service.
4. active participation in a riot.
5. commission of a felony.
6. revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

The Insurance Company will not pay Disability Benefits for any period of Disability during which the Employee:





7.  is incarcerated in a penal or corrections institution.
8.  is not receiving Appropriate Care.
9.  fails to cooperate with the Insurance Company in the administration of the claim.  Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.
10.  refuses to participate in rehabilitation efforts as required by the Insurance Company.
11.  refuses to participate in a Transitional Work Arrangement or other modified work arrangement.

"Transitional Work Arrangement" means any work offered to the Employee by the Employer or an affiliated company while the Employee is Disabled and which may be his or her own or any occupation.  The term includes but is not limited to reassigned duties, work site modification, flexible work arrangements, job adaptation or special equipment.

TL-004772

## CLAIM PROVISIONS

**Notice of Claim**
Written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible.  If written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as was reasonably possible.  Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent.  Notice should include the Employer's Name, the Policy Number and the claimant's name and address.

**Claim Forms**
When the Insurance Company receives notice of claim, the Insurance Company will send claim forms for filing proof of loss.  If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under the "Proof of Loss" section, written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, of the nature and extent of the loss.

**Claimant Cooperation Provision**
Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim.  Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

**Insurance Data**
The Employer is required to cooperate with the Insurance Company in the review of claims and applications for coverage.  Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

000025        EXHIBIT  A

**Proof of Loss**
Written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is not given in that 90 day period, the claim will not be invalidated nor reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given not more than one year after that 90 day period. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is provided outside of these time limits, the claim will be denied. These time limits will not apply while the person making the claim lacks legal capacity.

Written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, that the loss continues must be furnished to the Insurance Company at intervals required by us. Within 30 days of a request, written proof of continued Disability and Appropriate Care by a Physician must be given to the Insurance Company.

**Time of Payment**
Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which the Insurance Company is liable, will be paid at that time.

**To Whom Payable**
Disability Benefits will be paid to the Employee. If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, the Insurance Company may, at its option, make payment to the person or institution appearing to have assumed custody and support.

If an Employee dies while any Disability Benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Insurance Company from all liability for any payment made.

**Physical Examination and Autopsy**
The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.





**Physician/Patient Relationship**
The Insured will have the right to choose any Physician who is practicing legally.  The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Changes in Premium Rates**
The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice.  No change in rates will be made until 22 months after the Policy Effective Date.  An increase in rates will not be made more often than once in a 12 month period.  However, the Insurance Company reserves the right to change the rates even during a period for which the rate is guaranteed if any of the following events take place.
1. The terms of the Policy change.
2. A division, subsidiary, affiliated company or eligible class is added or deleted from the Policy.
3. There is a change in the factors bearing on the risk assumed.
4. Any federal or state law or regulation is amended to the extent it affects the Insurance Company's benefit obligation.
5. The Insurance Company determines that the Employer has failed to promptly furnish any necessary information requested by the Insurance Company, or has failed to perform any other obligations in relation to the Policy.

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

**Reporting Requirements**
The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

**Payment of Premium**
The first premium is due on the Policy Effective Date.  After that, premiums will be due monthly unless the Employer and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the plan will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

**Notice of Cancellation**
The Employer or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice.  If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

**Policy Grace Period**
A Policy Grace Period of 31 days will be granted for the payment of the required premiums under this Policy.  This Policy will be in force during the Policy Grace Period.  The Employer is liable to the Insurance Company for any unpaid premium for the time this Policy was in force.





**Grace Period for the Insured**
If the required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

**Reinstatement of Insurance**
An Employee's insurance may be reinstated if it ends because the Employee is on an unpaid leave of absence.

An Employee's insurance may be reinstated only if reinstatement occurs within 6 months from the date insurance ends due to an Employer approved unpaid leave of absence or must be returning from military service pursuant to the Uniformed Services Employment Act of 1994 (USERRA). For insurance to be reinstated the following conditions must be met.
1.      An Employee must be in a Class of Eligible Employees.
2.      The required premium must be paid.
3.      A written request for reinstatement must be received by the Insurance Company within 31 days from the date an Employee returns to Active Service.

Reinstated insurance will be effective on the date the Employee returns to Active Service. If an Employee did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation (if any) before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720

## GENERAL PROVISIONS

**Entire Contract**
The entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds.

**Incontestability**
All statements made by the Employer or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Insured's effective date of insurance, or from the effective date of any added or increased benefits, no such statement will cause insurance to be contested except for fraud or eligibility for coverage.

**Misstatement of Age**
If an Insured's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

**Policy Changes**
No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for insurance under any Workers' Compensation Insurance Law.



**Certificates**
A certificate of insurance will be delivered to the Employer for delivery to Insureds. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

**Assignment of Benefits**
The Insurance Company will not be affected by the assignment of an Insured's certificate until the original assignment or a certified copy of the assignment is filed with the Insurance Company. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided insurance under the Policy is in effect. This insurance may not be levied on, attached, garnisheed, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**
The Employer and Plan Administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.
1.    He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.
2.    The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Appropriate Care**
Appropriate Care means the determination of an accurate and medically supported diagnosis of the Employee's Disability by a Physician, or a plan established by a Physician of ongoing medical treatment and care of the Disability that conforms to generally accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Employee**
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is insured under the Policy.

14

000029



**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as an agent of the Insured for transactions relating to this insurance. The actions of the Employer shall not be considered the actions of the Insurance Company.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Indexed Covered Earnings**
For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.     10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.     the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
Any accidental loss or bodily harm which results directly and independently of all other causes from an Accident.

**Insurability Requirement**
An eligible person will satisfy the Insurability Requirement for an amount of coverage on the day the Insurance Company agrees in writing to accept him or her as insured for that amount. To determine a person's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on the Policy cover page.

**Insured**
A person who is eligible for insurance under the Policy, for whom insurance is elected, the required premium is paid and coverage is in force under the Policy.

**Physician**
Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

**Prior Plan**
The Prior Plan refers to the plan of insurance providing similar benefits sponsored by the Employer in effect directly prior to the Policy Effective Date.

**Sickness**
Any physical or mental illness.

TL-004708

15

000030



EXHIBIT  A

## SCHEDULE OF AFFILIATES

The following affiliates are covered under the Policy as of March 1, 2002.

Affiliate Name

       STAR Wealth Management
       STAR Financial Bank
       Grant Life

TL-004776

000031

EXHIBIT  A

### LIFE INSURANCE COMPANY OF NORTH AMERICA
### PHILADELPHIA, PENNSYLVANIA

We, STAR Financial Group, whose main office address is Ft. Wayne, IN, hereby apply to the Life Insurance Company of North America for Policy Number LK-970006.

We approve and accept the terms of this Policy.

This application is to be signed in duplicate. One part is to be attached to the Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Policy.

STAR Financial Group
(Full or Corporate Name of Applicant)

Signed at:_____ By: _____

(Signature and Title)

On:_____ Witness: _____

(To be signed by Licensed Resident Agent where required by law)
(This Copy Is To Remain Attached To The Policy)

TL-004778

---

### LIFE INSURANCE COMPANY OF NORTH AMERICA
### PHILADELPHIA, PENNSYLVANIA

We, STAR Financial Group, whose main office address is Ft. Wayne, IN, hereby apply to the Life Insurance Company of North America for Policy Number LK-970006.

We approve and accept the terms of this Policy.

This application is to be signed in duplicate. One part is to be attached to the Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Policy.

STAR Financial Group
(Full or Corporate Name of Applicant)

Signed at:_____ By: _____

(Signature and Title)

On:_____ Witness: _____

(To be signed by Licensed Resident Agent where required by law)
(This Copy Is To Be Returned To Us)

TL-004778

000032          EXHIBIT  A

## RIGHT TO FILE A COMPLAINT

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS.**

**PROBLEMS WITH YOUR INSURANCE?** Your satisfaction is very important to us. If you are having problems with your insurance, do not hesitate to contact the insurance company to resolve your problem.

Life Insurance Company of North America
P.O. Box 7716
Philadelphia, Pennsylvania 19192-2235
1-800-526-8312

**You can also contact the CONSUMER SERVICES DIVISION and file a complaint. You can contact the CONSUMER SERVICES DIVISION by contacting:**

Consumer Services Division
Indiana Department of Insurance
311 West Washington Street, Suite 300
Indianapolis, IN 46204-2787
1-800-622-4461 or 1-317-232-2395

TL-005693 (IN)

000033                    EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Michael Fitzgerald and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV12- 4443 MWF (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Frank N. Darras #128904                    (909) 390-3770
Lissa A. Martinez #206994
Susan B. Grabarsky #203004
Phillip S. Bather #273236
DARRASLAW
3257 East Guasti Road, Suite 300, Ontario, CA 91761
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| JEFFREY WILLIAMS, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV12-4443-MWF(JCGx)** |
| v. | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, ___DARRASLAW___, whose address is ___3257 East Guasti Road, Suite 300, Ontario, California 91761 (909) 390-3770___.   If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __MAY 2 2 2012__        By: __Marilyn Dunn__

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)





American LegalNet, Inc.
www.FormsWorkFlow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| JEFFREY WILLIAMS, | LIFE INSURANCE COMPANY OF NORTH AMERICA, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| DarrasLaw    (909) 390-3770<br>3257 E. Guasti Road, Suite 300, Ontario, California 91761 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C.§§1331, 1337 & 29 U.S.C.§1132(a),(e),(f) & (g) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.§1101, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☒ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**    Case Number: _____    **CV12-4443**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

American LegalNet, Inc.<br>www.FormsWorkflow.com

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Indiana |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Life Ins. Co. of N. America - 29 U.S.C. §1132(e)(2) found in this district is registered as a corporation with state of California, etc. | Life Insurance Company of North America - Pennsylvania |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _~signature~_     Date May 21, 2012

LISSA A. MARTINEZ

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com